**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

---

| | |
|---|---|
| LUCIO ARMENTA, | Civil Action No.  2:26-cv-10736 |
| **Plaintiff,** | |
| vs. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and ALLY FINANCIAL, | **With Jury Demand Endorsed** |
| **Defendants.** | |

---

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Lucio Armenta ("Plaintiff"), by and through counsel, for Plaintiff's Complaint against Defendants Experian Information Solutions, Inc., Trans Union LLC, and Ally Financial, jointly, severally, and in solido, state as follows:

### I.   INTRODUCTION

1.     Three of the Defendants, Experian Information Solutions, Inc., and Trans Union LLC are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and the other Defendant, Ally Financial, is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.     Plaintiff is a natural person residing in Glendale Heights, Illinois is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.     Upon information and belief, Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants,", does business in this judicial district and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

4.     Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5.     Upon information and belief, Defendant Ally Financial, which may also

hereinafter be referred to as "Ally," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Michigan company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, Ally Detroit Center, 500 Woodward Ave., Detroit, MI 48226. Ally is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Experian, and Trans Union.

### III. JURISDICTION AND VENUE

7.      Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arising under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

8.      Venue is proper in this District, because the CRA Defendants and Furnisher Defendants transact business in this District. Furnisher Defendant's headquarters is located in

this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Eastern District of Michigan as further described. 28 U.S.C. § 1391.

9. Venue is further proper in this District, because the CRA Defendants entered into agreements with Furnisher Defendant in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute sent from the CRA Defendants as part of Defendants' reinvestigations were submitted to Furnisher Defendant's headquarters and investigated by Furnisher Defendant using its resources located at or closely connected to this judicial district. Furnisher Defendant managed Plaintiff's account from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

10. In or around November 2016, Plaintiff secured a loan for Plaintiff's primary residence with Land Home Financial Services (hereinafter "LHFS") and was assigned account number 310144**** (hereinafter the "LHFS loan" or "LHFS account" or "LHFS tradeline").

11. In or around July 2017, Plaintiff secured an auto loan with Ally and was assigned account number 673926 **** (hereinafter the "Ally loan" or "Ally account" or "Ally tradeline").

12. In or around July 2017, Plaintiff secured an auto loan with Connexus Credit Union (hereinafter "Connexus") and Connexus assigned account number 110859**** (hereinafter the "Connexus loan" or "Connexus account" or "Connexus tradeline").

13. On or around April 14, 2019, Plaintiff filed for bankruptcy protection under Chapter 13 of Title 11.

14.     A redacted copy of Plaintiff's chapter 13 bankruptcy docket report for Plaintiff's bankruptcy case is attached hereto as Exhibit "A".

15.     On June 25, 2024, the Plaintiff was discharged from Chapter 13 Bankruptcy and excepted from discharge Plaintiff's secured loans—the Ally loan, LHFS loan, and Connexus loan.

16.     A redacted copy of Plaintiff's chapter 13 Discharge Order is attached hereto as Exhibit "B".

17.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts and certain other secured debts in a chapter 13 bankruptcy.

18.     Throughout Plaintiff's chapter 13 bankruptcy, under direct or indirect order from the bankruptcy, timely monthly payments were made to the Ally account, LHFS account, and Connexus account.

19.     Sometime in October 2025, Plaintiff obtained Plaintiff's three-bureau credit report and noticed that the Experian and Trans Union credit reports were not accurate.

20.     A redacted copy of Plaintiff's October 2025 tri-merge credit report is attached hereto as Exhibit "C".

21.     Within the Tri-Merge credit report, Plaintiff noticed that Experian reported the following inaccuracies for Plaintiff's LHFS mortgage: Experian failed to update the reporting of the LHFS mortgage after Plaintiff's chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section references to Plaintiff's chapter 13 bankruptcy, despite the Plaintiff having been discharged from chapter 13 bankruptcy, still residing in the home, and making payments on the property before, during, and after

Plaintiff's chapter 13 bankruptcy.

22. This reporting is incorrect because Plaintiff completed the required payments through Plaintiff's chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiff's secured mortgage debt from being discharged; therefore, any remarks and/or references to a chapter 13 bankruptcy should have been removed from the LHFS tradeline after the chapter 13 bankruptcy was discharged.[1]

23. Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 bankruptcy, and then continued reporting once a consumer is discharged.

24. Metro 2 guidelines have been adopted by Experian as the industry standards, and these industry standards are followed by both furnishers and Experian.

25. Within the Tri-Merge credit report, Plaintiff noticed that Trans Union reported the following inaccuracies for Plaintiff's Ally account: Trans Union failed to update the reporting of

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct the removal of any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

the Ally account after Plaintiff's chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section references to Plaintiff's chapter 13 bankruptcy, despite the Plaintiff having been discharged from chapter 13 bankruptcy, still residing in the home, and making payments on the property before, during, and after Plaintiff's chapter 13 bankruptcy.

26. This reporting is incorrect because Plaintiff completed the required payments through Plaintiff's chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiff's secured auto loan debt from being discharged; therefore, any remarks and/or references to a chapter 13 bankruptcy should have been removed from the Ally tradeline after the chapter 13 bankruptcy was discharged.[2]

27. Within the Tri-Merge credit report, Plaintiff noticed that Trans Union reported the following inaccuracies for Plaintiff's Connexus account: Trans Union failed to update the reporting of the Connexus account after Plaintiff's chapter 13 bankruptcy was discharged; reported an account status of "derogatory"; and reported within the creditor remarks section references to Plaintiff's chapter 13 bankruptcy, despite the Plaintiff having been discharged from chapter 13 bankruptcy, and making payments to the secured auto debt during Plaintiff's chapter 13 bankruptcy.

28. This reporting is incorrect because Plaintiff completed the required payments through Plaintiff's chapter 13 bankruptcy, was successfully discharged, and excepted Plaintiff's secured auto debt from being discharged; therefore, any remarks and/or references to a chapter

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

13 bankruptcy should have been removed from the Connexus tradeline after the chapter 13 bankruptcy was discharged.[3]

29.     Metro 2 guidelines require furnishers and/or credit reporting agencies to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Once a consumer is discharged, Metro 2 reporting standards specifically instruct furnishers and/or consumer reporting agencies to remove any referencing to a chapter 13 bankruptcy and suppression codes associated with bankruptcy reporting by submitting a CII code of "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 bankruptcy, and then continued reporting once a consumer is discharged.

30.     Metro 2 guidelines have been adopted by Trans Union as the industry standards, and these industry standards are followed by both furnishers and Trans Union.

31.     On or about November 18, 2025, Plaintiff sent direct disputes to the CRA Defendants and requested that the CRAs investigate the reporting of the Ally account, LHFS account, and Connexus account, and Plaintiff specifically addressed the above referenced issues with the reporting stated in the above Paragraphs. Plaintiff requested that under the FCRA, the CRAs conduct reasonable investigations and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Ally account and Connexus account.

---

[3] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct the removal of any bankruptcy references or suppression codes associated with bankruptcy reporting so that ongoing payments made by the consumer can be reported.

32.     Redacted copies of Plaintiff's unsigned dispute letters sent to CRAs are attached hereto as Exhibits "D," and "E," respectively.

33.     Experian failed to respond to Plaintiff's dispute, so Plaintiff requested an updated consumer report to see if any changes were made on Plaintiff's Consumer Report.

34.     A redacted copy of Plaintiff updated tri-merge credit report is as Exhibit "F".

35.     The updated Consumer Report showed that Experian made none of the substantive changes Plaintiff requested in the direct dispute to Experian, failed to update the LHFS account after the chapter 13 bankruptcy was discharged, and deleted the LHFS account without explanation or reasons for an outright deletion.

36.     Experian's response, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute, and Experian failed to remedy the inaccuracies within the LHFS account.

37.     Upon the Plaintiff's request to Experian to verify and correct the LHFS account, and in accordance with Experian's standard procedures, as well as the FCRA, because Experian ignored the evidence Plaintiff included with Plaintiff's dispute letter and unilaterally deleted the LHFS account from Plaintiff's Experian Consumer Report.

38.     Experian seemingly saw the word "Bankruptcy" in Plaintiff's dispute letter and unilaterally decided to delete the LHFS account and not even attempt to contact the furnisher of credit information.

39.     Experian simply ignored Plaintiff's request to involve Plaintiff's lender for the LHFS account and did not evaluate or consider the actual status of these accounts and lazily deleted the LHFS account without any explanation.

40.     Experian's willful failure to involve LHFS in Plaintiff's FCRA dispute is a willful

violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Experian to promptly notify LHFS of the dispute and provide all relevant information it received from Plaintiff for LHFS to investigate.

41. Experian willfully decided to keep Plaintiff's dispute to themselves, and deleted the LHFS account without performing any investigation at all.

42. Experian's failure to investigate Plaintiff's dispute letter, its failure to include LHFS in the dispute process, and its willful actions have injured Plaintiff's credit standing.

43. In the alternative to the allegation that Experian failed to contact Furnisher Defendant, it is alleged that Experian did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

44. Trans Union responded to Plaintiff's dispute on November 25, 2025.

45. A Redacted copy of Trans Union's response is attached hereto as Exhibit "G".

46. Trans Union's response showed that Trans Union made none of the substantive changes Plaintiff requested in the direct dispute to Trans Union, failed to update the Ally account and Connexus account after the chapter 13 bankruptcy was discharged and deleted the Ally account and Connexus account without explanation or reasons for an outright deletion.

47. Trans Union's response, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute, and Trans Union failed to remedy the inaccuracies within the Ally account and Connexus account.

48. Upon the Plaintiff's request to Trans Union to verify and correct the Ally account and Connexus account, and in accordance with Trans Union's standard procedures, as well as the FCRA, because Trans Union ignored the evidence Plaintiff included with Plaintiff's dispute letter and unilaterally deleted the Ally account and Connexus account from Plaintiff's Trans Union

Consumer Report.

49.     Trans Union seemingly saw the word "Bankruptcy" in Plaintiff's dispute letter and unilaterally decided to delete the Ally account and Connexus account and not even attempt to contact the furnisher of credit information.

50.     Trans Union simply ignored Plaintiff's request to involve Plaintiff's lender for the Ally account and Connexus account and did not evaluate or consider the actual status of these accounts and lazily deleted the Ally account and Connexus account without any explanation.

51.     Trans Union's willful failure to involve Ally and Connexus in Plaintiff's FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA required Trans Union to promptly notify Ally and Connexus of the dispute and provide all relevant information it received from Plaintiff for Ally and Connexus to investigate.

52.     Trans Union willfully decided to keep Plaintiff's dispute to themselves, and deleted the Ally account and Connexus account without perform any investigation at all.

53.     Trans Union's failure to investigate Plaintiff's dispute letter, its failure to include Ally and Connexus in the dispute process, and its willful actions have injured Plaintiff's credit standing.

54.     In the alternative to the allegation that Trans Union failed to contact Furnisher Defendant, it is alleged that Trans Union did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

55.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out

herein.

56.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

57.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

58.    Experian knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiff.

59.    Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

60.    After Experian knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's LHFS tradeline, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

61.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost

credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

62.     Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

63.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

64. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

65. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

66. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense

attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

67.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

68.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

69.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

70.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

71.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of

the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

72. Trans Union knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

73. Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

74. After Trans Union knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Ally and Connexus tradelines, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

75. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates

Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

76.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

77.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

78.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

79.     Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information

to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

80.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's

credit in light of the damage done to it continuously by Defendant.

81.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

82.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**ALLY'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

83.     Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

84.     Furnisher Defendant further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Ally account within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the Ally account, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Ally account within the consumer reporting agencies reports.

85.     As a result of Furnisher Defendant's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and

annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

86. Furnisher Defendant's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.      VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

87.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII.    DAMAGES

88.     Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Michigan.

89.     Plaintiff respectfully requests that this Honorable Court award Plaintiff's litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

90.     The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

91.     Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

92.     Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

93.     Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

94.     Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other

applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff prays that this Honorable Court:

A.      Enter Judgment in favor of Plaintiff and against Defendants Experian Information Solutions, Inc., Trans Union LLC, and Ally Financial, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing Plaintiff's credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.      Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.      Order that CRA Defendants, Experian Information Solutions, Inc. and Trans Union LLC, and Furnisher Defendant, Ally Financial, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show Plaintiff is justly entitled.

Date Filed: <u>March 4, 2026</u>

                               Respectfully submitted,

                               */s/ Blake R. Bauer*

Blake R. Bauer
MN State Bar Number 0396262
(admitted to practice in the Eastern
District of Michigan)
blake@fieldslaw.com
**FIELDS LAW FIRM**
9999 Wayzata Blvd.
Minnetonka, MN 55305
(612) 206-3489 (telephone)
(612) 370-4256 (fax)

COUNSEL FOR PLAINTIFF

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.


<u>March 4, 2026</u>                          <u>*/s/ Blake R. Bauer*</u>
Date                                         Blake R. Bauer